UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEJOUR FORD,<br>　*Plaintiff*,<br><br>　　v.<br><br>CORRECTION OFFICER CAMPBELL,<br>CAPTIAN LIZON, JOHN ALDY, ROLLIN<br>COOK, COUNSELOR MARIANNA, NICK<br>RODRIGUEZ, DERRICK MOLDEN,<br>　*Defendants.* | No. 3:21-cv-00089 (VAB) |

**INITIAL REVIEW ORDER**

Dejour Ford ("Plaintiff"), a *pro se* sentenced inmate currently housed at Cheshire Correctional Institution in the custody of the Department of Correction ("DOC"),[1] filed this civil rights Complaint[2] under 42 U.S.C. § 1983 against Northern Correctional Institution Correction Officer Campbell, Captain Lizon, Correctional Counselor Marianna, Warden Nick Rodriguez, Acting Deputy Director Derrick Molden, DOC Director of Intelligence John Aldy, and former Commissioner Rollin Cook. Compl., ECF No. 1 (Jan. 19, 2021).

Mr. Ford alleges that his rights under the Fifth, Fourteenth, and Eighth Amendments and the Americans with Disabilities Act ("ADA") were violated while he was a pretrial detainee confined in the Security Risk Program ("SRG") at Northern Correctional Institution. *Id*. He seeks damages and declaratory and injunctive relief. *Id*. at 13.

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website shows that Mr. Ford was sentenced on January 9, 2020, to four years for violation of parole. *See Inmate Information*, STATE OF CONNECTICUT DEPARTMENT OF CORRECTIONS, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=409913 (last visited April 22, 2021).

[2] Mr. Ford is proceeding *in forma pauperis*. Mot. for Leave to File In Forma Pauperis, ECF. No. 2 (Jan. 19, 2021); Order, ECF No. 7 (Jan. 27, 2021).

1

For the following reasons, the Court will permit Mr. Ford's claims of Fourteenth Amendment violation based on deliberate indifference to his health and safety to proceed, following this initial review.

## I. FACTUAL BACKGROUND[3]

Mr. Ford allegedly has been classified as "seriously mentally ill" with anti-social disorder, depression, post-traumatic stress disorder, attention deficient disorder, and attention deficient hyperactive disorder. Compl. ¶¶ 11-12. Mr. Ford allegedly takes medications to combat these disorders. *Id.* ¶ 13.

Mr. Ford allegedly sent inmate requests to Captain Lizon, Counselor Supervisor Marianna, Director Aldy, Commissioner Cook, Warden Rodriguez, and Deputy Warden Molden, stating that he feared Blood inmates and specific Blood inmates "Mac Ballers" who were out to get him due to his being labeled a snitch. *Id.* ¶ 19.

Nevertheless, Defendants Aldy, Cook, and Lizon allegedly kept Mr. Ford in the Security Risk ("SRG") Unit, although they knew Mr. Ford was no longer a gang member and that he had been labeled a snitch. *Id.* ¶ 32. Defendants Aldy, Cook, Rodriguez, Molden, Marianna and Lizon allegedly failed to protect Mr. Ford by not sending him to protective custody or single cell status despite knowledge of his safety risk. *Id.* ¶¶ 20, 33. Captain Lizon and Counselor Supervisor Marianna allegedly had informed another inmate, Mr. Williams, that Mr. Ford had requested protective custody. *Id.* ¶ 18.

On January 9, 2019, Mr. Williams allegedly told Mr. Ford to come to recreation the next day or he would place a hit on Mr. Ford's family. *Id.* ¶ 21. Mr. Ford allegedly feared for his

---

[3] All factual allegations are drawn from the Complaint. *See* Compl. Although some of the allegations are difficult to discern, the Court recounts the facts to the best of its ability. The Court has summarized Mr. Ford's allegations, but it has still considered all of the factual allegations of the Complaint.

family and went out to recreation on January 10, 2019, to see what Mr. Williams wanted and whether he could defuse the situation. *Id.* ¶¶ 22-23. Mr. Ford and other inmates, Mr. Rodgers, Mr. Ashton and Mr. Williams, allegedly were placed in handcuffs to be brought to recreation. *Id.* ¶ 24.

Correction Officer Campbell allegedly failed to secure Mr. Williams, which permitted him to remove his cuffs and strike Mr. Ford with his fist. *Id.* ¶¶ 25-26. While Mr. Ford allegedly was unconscious, Mr. Williams, Mr. Rodgers, and Mr. Ashton allegedly jumped, stomped and kicked Mr. Ford in the face, back and neck. *Id.* ¶ 16, 28. Mr. Williams then allegedly took Mr. Ford's shoe and forced it into his mouth to make the statement that Mr. Ford is a snitch and snitches need to shut up. *Id.* ¶ 29.

Mr. Ford allegedly was sent to an emergency room and suffered severe head trauma, scarring on his face and head, and a permanent injury to his right eye due to a bruised retina. *Id.* ¶ 30.

Mr. Ford allegedly was subjected to conditions of confinement that exacerbated his mental health and caused him to sustain physical injury as he was forcibly housed with Blood members who wanted to attack him. *Id.* ¶¶ 36. 37. Since the alleged assault, Mr. Ford allegedly has had bad nightmares and had difficulty sleeping. *Id.* ¶ 14. He allegedly has experienced severe paranoia and is concerned that everyone is out to get him and his family. *Id.* ¶ 15.

Defendants Cook, Aldy, Rodriguez, Molden, and Lizon allegedly denied Mr. Ford access to the telephone, visits, commissary, television, Game Boy, and property that other inmates in the general population are permitted. *Id.* ¶ 42. He allegedly was not entitled to the same programs or privileges as the general population inmates. *Id.* ¶ 43. Mr. Ford allegedly is deprived of post-secondary education due to his SRG status, and he allegedly is subjected to limitations on

his communications with other inmates, recreation, and his visiting days that are not imposed on the general population. *Id.* ¶ 44.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint . . . [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with "enough heft" to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court

4

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III. DISCUSSION

Mr. Ford alleges violation of his rights under the Fifth Amendment, Fourteenth Amendment, the Eighth Amendments and the ADA. Compl. at 11-13.

The standard for reviewing Mr. Ford's claim of deliberate indifference to his conditions of confinement, his need for protection, and his mental health turns on whether he is a convicted prisoner or pretrial detainee. Claims of convicted prisoners are analyzed under the Eighth Amendments, while claims of pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F. 3d 17, 29-34 n.9 (2d Cir. 2017); *Lloyd v. City of N.Y.*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017) ("These [deliberate indifference]

claims, when brought by pretrial detainees are "governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." (quoting *Darnell*, 849 F. 3d at 29)); *see also Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979) ("A sentenced inmate … may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."). Because Mr. Ford was a pretrial detainee at the time relevant to this complaint, his claims will be analyzed under the Due Process Clause of the Fourteenth Amendment.

Accordingly, the Eighth Amendment does not apply, and Mr. Ford's Eighth Amendment claims must be dismissed as not plausible.

### A. Fourteenth Amendment

To set forth a due process claim under the Fourteenth Amendment for indifference to health and safety, a plaintiff must allege facts to satisfy two prongs: (1) an "objective prong" showing that the plaintiff's condition of confinement posed a unreasonable risk of serious harm to the plaintiff, and (2) a "subjective prong" showing that the state actor's conduct amounts to deliberate indifference to that objectively serious risk of harm. *See Darnell*, 849 F. 3d at 29; *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019).

Under the objective prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health, . . . which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted). A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food,

clothing, shelter medical care, and reasonable safety, or has been subjected to an unreasonable risk of serious harm to his or her future health. *Id.* (internal quotation marks and citations omitted).

Relevant to the subjective element, "deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles*, 925 F.3d at 86 (citing *Darnell*, 849 F.3d at 33–34). Under the subjective prong, a pretrial detainee must allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. At the same time, "negligence … does not, without more, engender a constitutional claim." *Sanders v. Laplante*, No. 3:19-CV-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019); *see also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence.").

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the

underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

1. **Failure to Protect**

Mr. Ford alleges indifference to his safety based on his being housed with Blood members, who allegedly were trying to attack him, and by permitting him to be attacked by the other inmates. Compl. ¶¶ 19, 20, 25-26, 30, 32, 39.

Mr. Ford's allegations satisfy both the objective and subjective elements of the analysis. He has sufficiently alleged that Aldy, Cook, Rodriguez, Molden, Marianna and Lizon failed to protect him by not sending him to protective custody or affording single cell status despite knowledge of his safety risk after being labeled a snitch. *Id.* ¶¶ 20, 32-34. "[F]ailure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents" may amount to a constitutional claim for deliberate indifference. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (citation omitted). In addition, Mr. Ford has raised Fourteenth Amendment failure to protect claims based on his allegation that Captain Lizon and Counselor Supervisor Marianna had informed Mr. Williams that Mr. Ford had requested protective custody because such communication may have increased Mr. Ford's safety at risk. Compl. ¶ 18.

Mr. Ford also alleges that Correction Officer Campbell failed to ensure that Mr. Williams's cuffs were secure, allegations sufficient, for initial pleading purposes at least, to raise an inference that Officer Campbell failed to take reasonable steps to protect Mr. Ford from the inmate assault. *See id.* ¶¶ 25-26.

Accordingly, the Fourteenth Amendment failure to protect claims may proceed against all defendants at this time.

### 2. Mental Health

Mr. Ford alleges that the defendants subjected him to conditions of confinement that exacerbated his mental health. *Id.* ¶ 36. He has alleged having been classified as "a seriously mentally ill" individual, who suffers from anti-social disorder, depression, post-traumatic stress disorder, attention deficit disorder and paranoia, and is prescribed medication for these conditions, and that his conditions of confinement, namely being housed with gang members who wanted to attack him, exacerbated his mental health. *Id.* ¶¶ 11-13, 36, 37.

For initial pleading purposes, Mr. Ford's allegations satisfy the objective and subjective elements of the analysis. His allegations indicate that he had serious mental health condition and that he informed Defendants Cook, Aldy, Marianna, Rodriguez, Molden, and Lizon, *see id.* ¶¶ 19, 32, 54, about his fears concerning his current placement, but they failed to take any remedial measures, such as removing him from the SRG unit before or after the assault and/or not transferring him to Garner, which is the state's only mental health facility, *id.* ¶¶ 19, 54.

Accordingly, the Court construes Mr. Ford's allegations most liberally and will permit his claim of Fourteenth Amendment indifference to his health to proceed against Defendants Cook, Aldy, Marianna, Rodriguez, Molden, and Lizon.

### B.     Fifth Amendment

Plaintiff states that Defendants Cook, Aldy, Rodriguez, Molden and Lizon violated his Fifth Amendment rights. *Id.* ¶ 54.

The Fifth Amendment Due Process Clause, however, generally applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ambrose v. City of N.Y.*, 623 F. Supp.2d 454, 466–67 (S.D.N.Y. 2009) ("[I]t is clear that Plaintiff fails to state any claim under the Fifth Amendment . . . [b]ecause Plaintiff's lawsuit does not

9

allege any deprivation of his rights by the federal government, any due process claim he has against the City is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment."). Plaintiff has not alleged that a federal official violated his Fifth Amendment rights and he has not alleged facts to indicate a violation of any provision of the Fifth Amendment.

Accordingly, any Fifth Amendment claims will be dismissed.

C.     ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. It is well settled that the protections of the ADA "undoubtedly apply to state prisons and their prisoners." *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 72 (2d Cir. 2016). An inmate may not maintain an ADA claim against a state actor in his or her individual capacity. *See Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide "for individual capacity suits against state officials."); *Morales v. New York*, 22 F. Supp. 3d 256, 271 (S.D.N.Y. 2014) ("[T]here is no individual liability . . . under the Americans with Disabilities Act").

Mr. Ford alleges that Defendants Cook, Aldy, Rodriguez, Molden, and Lizon violated his rights under the ADA by discriminating against him due to his mental health disorders. Compl. ¶ 40. He alleges that these defendants subjected him to restrictive conditions of confinement that put his mental and physical health, but they failed to provide him with any reasonable accommodation by placing him in an integrated setting appropriate for his needs. *Id.* at ¶ 45. Based on the caselaw discussed above, any ADA claim asserted against the defendants in their

individual capacities is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1). The Court considers, however, the ADA claim as asserted against the defendants in their official capacities.

To state a claim under the ADA for failure to provide a reasonable accommodation, an inmate "must show that 1) he is a qualified individual with a disability; 2) [the prison] is an entity subject to the [ADA]; and 3) he was denied the opportunity to participate in or benefit from [prison] services, programs, or activities or [the prison] otherwise discriminated against him by reason of his disability." *N.Y. State Dep't of Corr.*, 831 F.3d at 72. "The second prong requires the disabled plaintiff to allege that his or her mistreatment 'was motivated by either discriminatory animus or ill will due to disability.'" *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (quoting *Garcia*, 280 F.3d at 112). "Discrimination under the third prong can include failure to make a reasonable accommodation for the inmate." *McFadden v. Noeth*, 827 F. App'x 20, 28 (2d Cir. 2020) (internal quotation marks and citation omitted).

Mr. Ford claims that he has been classified as a seriously mentally ill individual, who has been "diagnosed with several mental health disorders such as anti-social disorder, depression, post-traumatic stress disorder, attention deficit hyperactive disorder, and paranoia. Compl. ¶¶ 11-12. He states that he has taken medication to treat his conditions. *Id.* ¶ 13.

For initial pleading purposes, Mr. Ford's allegations are sufficient to show that his mental health conditions substantially limit one or more of his major life activities, but they fail to satisfy standards for an ADA claim.

Under the second element of a Title II ADA claim, the Court considers whether any defendant has denied Mr. Ford the opportunity to participate in or benefit from Department of

Corrections' services, programs, or activities, or has otherwise discriminated against him, by reason of his mental disorders. "[T]he relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003).

Mr. Ford asserts that the defendants have not afforded him a reasonable accommodation due to his placement in restrictive confinement conditions (where he is deprived of certain privileges and property afforded to the general population) rather than the most integrated setting appropriate for his needs. Compl. ¶ 45. Mr. Ford's allegations do not, however, indicate that he has been excluded from any program, service, or benefit to which he was legally entitled. Moreover, he has not alleged any facts showing that he was denied or excluded any program, service or benefit by reason or because of his disability. *See Torrez v. Semple*, No. 3:17-cv-1232 (SRU), 2018 WL 2303018, at *8 (D. Conn. May 21, 2018) ("[The plaintiff] does not allege that the defendants treated or sanctioned him in a different way than they treated or sanctioned any other inmate who was involved in a physical altercation."); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) (dismissing claim of mentally-disabled inmates challenging placement in isolation because complaint contained no allegations showing absence of even-handed treatment; inmates did not "allege that violent and self-destructive inmates who are disabled due to mental illness are treated any differently than violent, self-destructive inmates who are not disabled due to mental illness").

Mr. Ford's Complaint suggests that he should be treated differently because of his mental health conditions, but that is insufficient to satisfy a claim for ADA violation. *See Torrez,* No. 3:17-CV-1232 (SRU), 2018 WL 2303018, at *9 (dismissing similar inmate ADA claim for

12

failure to allege "that the defendants denied him treatment or participation in various programs or activities or otherwise discriminated against him because of his mental health conditions").

Accordingly, the ADA claims will be dismissed as not plausible.

### E. The Official Capacity Claims

Monetary relief from state officials acting in their official capacity is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166-68 (1985) (holding that the Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that Section 1983 does not override a state's Eleventh Amendment immunity).

Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), however, a plaintiff may seek prospective injunctive or declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007). In determining whether *Ex parte Young* applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted). Moreover, "dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (internal quotation marks, citations, and alterations omitted).

Finally, federal courts can order "[p]rospective relief in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). Injunctive relief

afforded by a court must be narrowly tailored or proportional to the scope of the violation and extending no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Thus, "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution" should be rejected. *Id*.

Mr. Ford asserts his claims against the defendants in their official capacities. Compl. at 13. Mr. Ford also seeks a declaratory judgment and injunctive relief. *Id*. Mr. Ford requests a declaration that the Defendants have violated his federal constitutional rights in the past. *Id*. He also requests a restraining order regarding his SRG placement. *Id*.

As indicated by the caselaw discussed above, to the extent Mr. Ford seeks monetary damages against any of the defendants in their official capacities, such relief is foreclosed. *See Graham*, 473 U.S. at 166-68. As to his request for a declaratory judgment of the alleged violation of past constitutional rights, that relief also is barred by the Eleventh Amendment. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (holding the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief").

And, if Mr. Ford prevails on his Fourteenth Amendment claims, a judgment in his favor would serve the same purpose as a declaration that the conditions were unconstitutional. Thus, Mr. Ford's request for declaratory relief is not distinct from the relief sought in his other viable claims and is dismissed. *See, e.g., United States v. $2,350,000.00 in Lieu of One Parcel of Prop. Located at 895 Lake Ave., Greenwich, Conn.*, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be

prevailing innocent owners and declaration to that effect would be redundant). Thus, the request for a declaratory judgment will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The plausible claims remaining in the case arise from Mr. Ford's conditions of confinement at Northern in 2019. At present, Mr. Ford is housed at Cheshire and is no longer placed in the Northern SRG program. Thus, Mr. Ford's request seeks a remedial measure that extends beyond the scope of the violations at issue. Further, the Second Circuit has held that an inmate's request for prospective injunctive relief from correctional staff in connection with conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged from that institution, is transferred to a different institution, or has received the relief requested. *See Booker v. Graham*, 974 F.3d 101, 107–08 (2d Cir. 2020) ("'In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed").

Accordingly, Mr. Ford's request for injunctive relief against the defendant employees at Northern will be dismissed as not plausible.

**ORDERS**

For the foregoing reasons, the Court permits the following:  (1) Mr. Ford's Fourteenth Amendment claims based on failure to protect to proceed against all defendants in their individual capacities for damages; and (2) his Fourteenth Amendment deliberate indifference to his health to proceed against Defendants Cook, Aldy, Marianna, Rodriguez, Molden, and Lizon in their individual capacity for damages.

All other claims are dismissed without prejudice. By **May 28, 2021**, Mr. Ford may file an amended complaint to correct the deficiencies identified in this ruling. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

(2) The Clerk of Court shall verify the current work address for Rollin Cook, Captain Lizon, John Aldy, Counselor Marianna, Nick Rodriguez, Derrick Molden, and Correction Officer Campbell with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint to them at their confirmed addresses by **May 14, 2021**, and report on the status of the waiver request by **May 21, 2021**.

If a Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the amended complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) The Defendants shall file their response to the amended complaint, either an Answer or motion to dismiss, by **July 23, 2021**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. The Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **December 3, 2021**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **January 28, 2022**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of April, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE